Anthony J. Pope (AP 2188)
CARUSO POPE EDELL PICINI, P.C.
60 ROUTE 46 EAST
FAIRFIELD, NEW JERSEY 07004
973-667-6000
Attorneys for the Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Anthony CASSO,<br><br>　　　　　Plaintiff<br><br>v.<br><br>Philip CARLO,<br><br>　　　　　Defendant | Case No.: 09 Civ. 520 (LTS)(JCF)<br><br><br>**Civil Action** |

---

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

---

CARUSO POPE EDELL PICINI, P.C.
60 Route 46 East
Fairfield, New Jersey
(973) 667-6000
Attorneys for Plaintiff,

On the Brief:
　　　Anthony J. Pope, Esq.
　　　Jason J. LeBoeuf, Esq.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................... ii

STATEMENT OF PROCEDURAL HISTORY ............................... 1

STATEMENT OF FACTS .......................................... 1

LEGAL ARGUMENT .............................................. 2

    I.    DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST THE
        DEFENDANT AS A RESULT OF THE DEFENDANT'S FAILURE TO
        RESPOND AND IN LIGHT OF THE FACTS WHICH SUPPORT
        PLAINTIFF'S COMPLAINT. ............................. 2

CONCLUSION .................................................. 7

## TABLE OF AUTHORITIES

**Cases**

Greyhound Exhibitgroup v. E.L.U.L. Realty,
  973 F.2d 155 (2d Cir. 1992) ................................. 4

O'Callaghan v. Sifre,
  242 F.R.D. 69 (S.D.N.Y. 2007) ............................... 3

Swarna v. Al-Awadi,
  607 F.Supp. 2d 509 (S.D.N.Y. 2009) ....................... 3, 4

United States Fid. & Guar. Co. v. PetroBras S.A.,
  220 F.R.D. 404 (S.D.N.Y. 2008) ............................. 3

**Rules**

F.R.C.P. 55 ................................................... 2

F.R.C.P. 55(a) ............................................... 3

## STATEMENT OF PROCEDURAL HISTORY

Plaintiff adopts by reference the attached Affidavit of Counsel in support of this Motion as the Statement of Procedural History.

## STATEMENT OF FACTS

Plaintiff adopts by reference the attached Affidavit of the Plaintiff, Anthony Casso, in support of this Motion as the Statement of Facts.

## LEGAL ARGUMENT

**I.   DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST THE DEFENDANT AS A RESULT OF THE DEFENDANT'S FAILURE TO RESPOND AND IN LIGHT OF THE FACTS WHICH SUPPORT PLAINTIFF'S COMPLAINT.**

Federal Rule of Civil Procedure 55 states in pertinent part the following:

> (a)   **Entry.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.
>
> (b)   **Judgment.** Judgment by default may be entered as follows:
>
> \*        \*        \*        \*        \*
>
> **By the Court.** In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> > (A)   conduct an accounting;
> >
> > (B)   determine the amount of damages;
> >
> > (C)   establish the truth of any allegation by evidence; or
> >
> > (D)   investigate any other matter.

F.R.C.P. 55.

Granted, a party cannot move for default judgment without first taking the required step of obtaining entry of default

from the Clerk of the Court, which can only be obtained upon submission of satisfactory affidavit of service, pursuant to F.R.C.P. 55(a). O'Callaghan v. Sifre, 242 F.R.D. 69 (S.D.N.Y. 2007). Furthermore, the discretion to grant such relief is within the sound judgment of the trial court. United States Fid. & Guar. Co. v. PetroBras S.A., 220 F.R.D. 404 (S.D.N.Y. 2008).

In the present case, as demonstrated in the attached Affidavit of Counsel, on January 20, 2009, Plaintiff filed a Notice of Complaint and Summons with the Court. (Exhibit A). Said complaint and summons was served on the Defendant, Philip Carlo on April 25, 2009. (Exhibit B). Proof of that service was filed with the Court on May 21, 2009. (Exhibits C & D). On July 17, 2009, the Clerk of the Court, J. Michael McMahon, by his deputy, issued a signed and stamped Certificate entering the default against the Defendant. (Exhibit D). The Clerk repeated this procedure on November 2, 2009. (Exhibit C). As such, the prerequisites necessary for the Court to consider a Default Judgment, pursuant to F.R.C.P. 55(a) have been satisfied.

Thus, all that is left for the Court to determine is if in its discretion the default judgment should be awarded. The Plaintiff respectfully submits that such a judgment should be granted. In Swarna v. Al-Awadi, 607 F.Supp. 2d 509 (S.D.N.Y. 2009), the Court held that where the defendants failed to answer

the complaint and gave no indication that they ever planned to defend the action that declining to grant default judgment was in error. The Court found the remedy of default judgment to be the correct result, particularly in light of the defendant's deliberate and willful default and the unlikelihood of defendant's success. Id., at 529.

In the case at bar, there exists sufficient evidence, as demonstrated by the supporting exhibits as well as the Affidavit of the Plaintiff, Anthony Casso, to support all the claims of the Plaintiff's Complaint. Moreover, "defendant's default is deemed to constitute a concession of all well-pleaded allegations of liability." Greyhound Exhibitgroup v. E.L.U.L. Realty, 973 F.2d 155, 158 (2d Cir. 1992).

In the present case, the Plaintiff alleges "Unjust Enrichment," "Breach of Contract," "Breach of the Implied Covenant of Good Faith and Fair Dealing," and "Fraud" on behalf of the Defendant. (Exhibit A). Clearly, all of these causes of action are supported by the facts outlined in the Plaintiff's Affidavit.

It is evident when considering the facts of the within matter, that the Defendant breached a contract with the Plaintiff to write his biography, wherein both parties would share in the proceeds. The Plaintiff proceeded in granting the Defendant the benefits of his permission and the intimate

details of his life story. The Defendant was paid by HarperCollins Publishing Company, and yet, he has failed to relay any portion of those proceeds to the Plaintiff or his representatives.

The Defendant, Philip Carlo approached the Plaintiff, Anthony Casso about writing his life story. (Aff. of Casso, ¶2; 3). Although, Mr. Casso already had a developing deal to write his life story, he granted Mr. Carlo the deal instead, based mainly on the former's relationship with the parents of the latter. (Aff. of Casso, ¶4-6). Additionally, Mr. Carlo made certain representations regarding assisting Mr. Casso with regard to his legal problems in order to secure the rights to publish his biography. (Aff. of Casso, ¶5). As a result of these factors, Mr. Casso agreed to enter in to an agreement for Mr. Carlo to write his life story. (Aff. of Casso, ¶6).

The terms of the agreement between the two men called for an even split of the proceeds. (Aff. of Casso, ¶8). Similarly, any proceeds that may arise from said publication being produced into a motion picture would also be split evenly between the two parties. (Aff. of Casso, ¶9).

In a letter of July 11, 2007, and again in correspondence of July 28, 2007, the Defendant outlined for the Plaintiff the method by which HarperCollins would dole out the money for this undertaking. (Aff. of Casso, ¶10; 11); (Exhibits E & F).

Nevertheless, Mr. Casso was never paid any monies with regard to the publication of his life story. (Aff. of Casso, ¶15).

Mr. Casso attempted on various occasions to reach Mr. Carlo via mail. (Aff. of Casso, ¶14); (Exhibit G). Clearly, Mr. Casso's ability to reach out to Mr. Carlo was hampered by his incarceration; a situation of which the Defendant took full advantage. In one particular letter, dated October 9, 2007, Mr. Casso attempted to remind Mr. Carlo of his contractual obligation to Mr. Casso, of the fact that Mr. Casso gave Mr. Carlo the book deal despite other interest and the sheer ridiculousness of Mr. Carlo suggesting that Mr. Carlo would have relinquished his life story without any consideration. (Exhibit G). Despite, these repeated attempts at refreshing Mr. Carlo's recollection, Mr. Casso remains unsatisfied, while Mr. Carlo was unjustly enriched by breaching the contract and the implied covenant of good faith and fair dealing with Mr. Casso. As such, there exists sufficient evidence to support the unanswered complaint of the Plaintiff and it is respectfully submitted that the Court should grant a default judgment for the Plaintiff.

## CONCLUSION

Due to the aforementioned reasons the Plaintiff's Motion for Default Judgment against the Defendant, Philip Carlo, should be granted.

Respectfully submitted,

CARUSO POPE EDELL PICINI, P.C.
60 Route 46 East
Fairfield, New Jersey
(973) 667-6000
Attorneys for Plaintiff,
Anthony Casso

By: _____
ANTHONY J. POPE (AP2188)

Dated:  March 3, 2010

JS 44C/SDNY
REV. 1/2008

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Anthony Casso | Philip Carlo |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Picillo Caruso Pope Edell Picini, P.C. 60 Route 46 East, Fairfield, NJ 07004 | Kenneth Aronson, Esq. |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Plaintiff maintains that Defendant breached a contract. Jurisdiction with the Court pursuant to 25 U.S.C. 1332(a)1.

Has this or a similar case been previously filed in SDNY at any time? No? [✓] Yes? [ ]  Judge Previously Assigned _____

If yes, was this case Vol.[ ] Invol.[ ] Dismissed. No[ ] Yes [ ]  If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*        NATURE OF SUIT

**TORTS**

**ACTIONS UNDER STATUTES**

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110  INSURANCE | [ ] 310  AIRPLANE | [ ] 362  PERSONAL INJURY - MED MALPRACTICE | [ ] 610  AGRICULTURE | [ ] 422  APPEAL 28 USC 158 | [ ] 400  STATE REAPPORTIONMENT |
| [ ] 120  MARINE | [ ] 315  AIRPLANE PRODUCT LIABILITY | [ ] 365  PERSONAL INJURY PRODUCT LIABILITY | [ ] 620  OTHER FOOD & DRUG | [ ] 423  WITHDRAWAL 28 USC 157 | [ ] 410  ANTITRUST |
| [ ] 130  MILLER ACT | [ ] 320  ASSAULT, LIBEL & SLANDER | [ ] 368  ASBESTOS PERSONAL INJURY PRODUCT LIABILITY | [ ] 625  DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 | | [ ] 430  BANKS & BANKING |
| [ ] 140  NEGOTIABLE INSTRUMENT | [ ] 330  FEDERAL EMPLOYERS' LIABILITY | | | **PROPERTY RIGHTS** | [ ] 450  COMMERCE |
| [ ] 150  RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | [ ] 340  MARINE | **PERSONAL PROPERTY** | [ ] 630  LIQUOR LAWS | [ ] 820  COPYRIGHTS | [ ] 460  DEPORTATION |
| | [ ] 345  MARINE PRODUCT LIABILITY | [ ] 370  OTHER FRAUD | [ ] 640  RR & TRUCK | [ ] 830  PATENT | [ ] 470  RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| [ ] 161  MEDICARE ACT | [ ] 350  MOTOR VEHICLE | [ ] 371  TRUTH IN LENDING | [ ] 650  AIRLINE REGS | [ ] 840  TRADEMARK | |
| [ ] 152  RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) | [ ] 355  MOTOR VEHICLE PRODUCT LIABILITY | [ ] 380  OTHER PERSONAL PROPERTY DAMAGE | [ ] 660  OCCUPATIONAL SAFETY/HEALTH | | [ ] 480  CONSUMER CREDIT |
| | [ ] 360  OTHER PERSONAL INJURY | [ ] 385  PROPERTY DAMAGE PRODUCT LIABILITY | [ ] 690  OTHER | **SOCIAL SECURITY** | [ ] 490  CABLE/SATELLITE TV |
| [ ] 153  RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS | | | | [ ] 861  HIA (1395ff) | [ ] 810  SELECTIVE SERVICE |
| | | | **LABOR** | [ ] 862  BLACK LUNG (923) | [ ] 850  SECURITIES/ COMMODITIES/ EXCHANGE |
| [ ] 160  STOCKHOLDERS SUITS | | | [ ] 710  FAIR LABOR STANDARDS ACT | [ ] 863  DIWC/DIWW (405(g)) | [ ] 875  CUSTOMER CHALLENGE 12 USC 3410 |
| [X] 190  OTHER CONTRACT | | | [ ] 720  LABOR/MGMT RELATIONS | [ ] 864  SSID TITLE XVI | |
| [ ] 195  CONTRACT PRODUCT LIABILITY | | | [ ] 730  LABOR/MGMT REPORTING & DISCLOSURE ACT | [ ] 865  RSI (405(g)) | [ ] 890  OTHER STATUTORY ACTIONS |
| [ ] 196  FRANCHISE | **ACTIONS UNDER STATUTES** | | [ ] 740  RAILWAY LABOR ACT | **FEDERAL TAX SUITS** | [ ] 891  AGRICULTURAL ACTS |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790  OTHER LABOR LITIGATION | [ ] 870  TAXES (U.S. Plaintiff or Defendant) | [ ] 892  ECONOMIC STABILIZATION ACT |
| | [ ] 441  VOTING | [ ] 510  MOTIONS TO VACATE SENTENCE 28 USC 2255 | [ ] 791  EMPL RET INC SECURITY ACT | [ ] 871  IRS-THIRD PARTY 26 USC 7609 | [ ] 893  ENVIRONMENTAL MATTERS |
| **REAL PROPERTY** | [ ] 442  EMPLOYMENT | | | | [ ] 894  ENERGY ALLOCATION ACT |
| | [ ] 443  HOUSING/ ACCOMMODATIONS | [ ] 530  HABEAS CORPUS | **IMMIGRATION** | | [ ] 895  FREEDOM OF INFORMATION ACT |
| [ ] 210  LAND CONDEMNATION | [ ] 444  WELFARE | [ ] 535  DEATH PENALTY | | | [ ] 900  APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE |
| [ ] 220  FORECLOSURE | [ ] 445  AMERICANS WITH DISABILITIES - EMPLOYMENT | [ ] 540  MANDAMUS & OTHER | [ ] 462  NATURALIZATION APPLICATION | | |
| [ ] 230  RENT LEASE & EJECTMENT | | [ ] 550  CIVIL RIGHTS | [ ] 463  HABEAS CORPUS-ALIEN DETAINEE | | [ ] 950  CONSTITUTIONALITY OF STATE STATUTES |
| [ ] 240  TORTS TO LAND | [ ] 446  AMERICANS WITH DISABILITIES -OTHER | [ ] 555  PRISON CONDITION | [ ] 465  OTHER IMMIGRATION ACTIONS | | |
| [ ] 245  TORT PRODUCT LIABILITY | [ ] 440  OTHER CIVIL RIGHTS | | | | |
| [ ] 290  ALL OTHER REAL PROPERTY | | | | | |

_Check if demanded in complaint:_

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

DEMAND $ _____ OTHER _____    JUDGE _____    DOCKET NUMBER _____

_Check YES only if demanded in complaint_
JURY DEMAND: [ ] YES [ ] NO

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

# EXHIBIT A

*(PLACE AN x IN ONE BOX ONLY)*

## ORIGIN

[x] 1 Original
Proceeding

[ ] 2a. Removed from
State Court

[ ] 2b. Removed from
State Court AND
at least one
party is pro se.

[ ] 3 Remanded from
Appellate Court

[ ] 4 Reinstated or
Reopened

[ ] 5 Transferred from
(Specify District)

[ ] 6 Multidistrict
Litigation

[ ] 7 Appeal to District
Judge from
Magistrate Judge
Judgment

*(PLACE AN x IN ONE BOX ONLY)*

## BASIS OF JURISDICTION

[ ] 1 U.S. PLAINTIFF    [ ] 2 U.S. DEFENDANT    [ ] 3 FEDERAL QUESTION
(U.S. NOT A PARTY)    [x] 4 DIVERSITY

**IF DIVERSITY, INDICATE
CITIZENSHIP BELOW.
(28 USC 1322, 1441)**

## CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF DEF |  | PTF DEF |  | PTF DEF |
|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 [X] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 [ ] 5 |
| CITIZEN OF ANOTHER STATE | [X] 2 [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 [ ] 4 | FOREIGN NATION | [ ] 6 [ ] 6 |

## PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

FMC BUTNER
FEDERAL MEDICAL CENTER
OLD N. CAROLINA HWY 75
BUTNER, NC 27509
Granville County

## DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

Phillip Carlo
c/o Kenneth Aronson, Esq.
270 Madison Avenue, 13th Floor
New York, New York 10016-0601

## DEFENDANT(S) ADDRESS UNKNOWN

REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE
RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    [ ] WHITE PLAINS    [x] MANHATTAN
(DO NOT check either box if this a PRISONER PETITION.)

DATE
1/15/09
RECEIPT #

SIGNATURE OF ATTORNEY OF RECORD

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[ ] YES (DATE ADMITTED Mo. 04  Yr. 1998 )
Attorney Bar Code # AP2188

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J. Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

Anthony J. Pope (AP 2188)
PICILLO CARUSO POPE EDELL PICINI, P.C.
60 Route 46 East
Fairfield, New Jersey 07004
(973) 667-6000
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY CASSO,<br><br>    Plaintiff,<br><br>    vs.<br><br>PHILIP CARLO,<br><br>    Defendants. | 09 Civ.    (    )<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff, Anthony Casso, by his attorneys, Picillo Caruso Pope Edell Picini, P.C. as and for his Complaint herein alleges as follows:

### NATURE OF THIS ACTION

1.    In or about 2006, defendant Philip Carlo attempted to initiate a telephone call with the plaintiff, Anthony Casso, who was incarcerated at that time at the U.S. Penitentiary in Florence, Colorado ("ADX").

2.    Defendant was denied permission to speak with plaintiff based upon a background check that had been conducted which revealed that defendant had a felony conviction for check fraud.

3.    Defendant continued to pursue Mr. Casso and through written communication requested that he be added to the plaintiff's visiting list as a friend. Plaintiff agreed to same as he had known and been very friendly with defendant's parents.

4.   Defendant Carlo requested that he be given an opportunity to write the defendant's biography.

5.   Defendant Carlo made repeated representations that he would assist the plaintiff in having his conviction reviewed by counsel in order to induce the plaintiff to work with him in developing and writing the biography.

6.   Defendant utilized what the plaintiff believed to be a friendship in order to obtain plaintiff's trust and confidence.

7.   After gaining the trust and confidence of plaintiff, defendant forwarded an Initial Proposal to the plaintiff.

8.   As a result of the false representations made by defendant and the long-standing friendship between plaintiff and defendant's parents, plaintiff agreed to enter into a contract with defendant to write his biography.

9.   The terms discussed and agreed upon in 2007 were that all income derived from the book would be equally divided between plaintiff and defendant.

10.  Defendant has acknowledged that all income derived from any movie or television deal developed from the book would be divided equally.

11.  On or about July 11, 2007, defendant issued correspondence to plaintiff setting forth the timing of and amounts payments. In said correspondence, Carlo specifically wrote in pertinent part, "Regarding the five, I want you to get some insight into the larger picture before I say more, In the publishing industry these days they spread payments out over a 3 year time period that goes like this -- ¼ upon signing the contract, ¼ upon handing the book in, ¼ upon release, and ¼ upon publishing the soft cover version. Because it happens like this, you never see a substantial amount at one time. It make

the economics of doing this somewhat impractical… Having said that, **you need to understand that we did not get what we were hoping for** because four books have been contracted on the mafia cops situation, all of which describe your career in detail." (emphasis supplied).

12. On or about July 28, 2007, correspondence was exchanged between the plaintiff and defendant which explained the amount and timing of the payment to be made in connection with the publication of the book. Said correspondence set forth the amount of the advance, the percentage payments and the timing of payments from the publisher.

13. In neither the July 11, 2007 nor the July 28, 2007 correspondence did Defendant advise plaintiff that he was not entitled to a portion of payments from the Book.

14. Only after he had obtained cooperation from the plaintiff did the defendant then attempt to change the terms of the transaction.

15. After defendant had obtained all information he required from plaintiff, he failed to respond to numerous letters from plaintiff.

16. In or about July of 2008, the book *GasPipe* was published by Harper Collins.

17. Defendant now asserts that income from the publication of the book was not part of the agreement between plaintiff and defendant. Said assertion is false.

## JURISDICTION AND VENUE

18. The Court's jurisdiction is based upon diversity of citizenship, pursuant to 28 U.S.C. 1332(a)1). The amount if controversy also exceeds the sum or value of $75,000, exclusive of interest and costs.

19.   The Court may properly exercise personal jurisdiction over the defendant in that, among other things, he is doing business in the State of New York and has committed intentional torts in such manner as to cause harm to Mr. Casso from the State of New York.

20.   Venue lies in this District pursuant to 28 U.S.C. 1391(a). A substantial part of the events giving rise to the claims in suit occurred within this District.

## THE PARTIES

21.   At all times relevant to this Complaint, Mr. Casso was and still is a citizen of the State of New York. He presently resides, however, in the State of Colorado at the ADX.

22.   Upon information and belief, at all times relevant to this Complaint, defendant, Carlo was a citizen of the State of Florida, residing in Miami.

## FIRST CLAIM
(Unjust Enrichment)

23.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 23 above.

24.   By reason of the foregoing, defendant has been unjustly enriched at plaintiff's expense in that defendant, Carlo received the benefits of using the plaintiff's life story without compensating plaintiff as agreed upon.

25.   As a result of defendant's unlawful conduct as alleged above, the plaintiff has been and continues to be substantially injured and is entitled to the damages he has sustained and will sustain, and any gains, profits, advantages obtained by defendant as a result of his unlawful acts.

## SECOND CLAIM
### (Breach of Contract)

26.    Plaintiff repeats and realleges each of the allegations contained in paragraph 1

through 25 above.

27.    Pursuant to the contract between Mr. Casso and defendant Carlo, Mr. Casso was to

receive fifty percent of the proceeds that Mr. Carlo derived from writing the book.

28.    Defendant, Carlo is in breach of his contract with Mr. Casso.

29.    As a result of the defendant's breach of the contract alleged above, Mr. Casso has

been and continues to be substantially injured and is entitled to the damages he has

sustained and will sustain, and any gains, profits or advantages he was to receive

under the terms of the contract.

## THIRD CLAIM
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

30.    Plaintiff repeats and realleges each of the allegations contained in paragraph 1

through 29 above.

31.    Defendant Carlo's actions constitute a breach of the covenant of good faith and fair

dealing which was part of his contract with Mr. Casso.

32.    As a result of the defendant's breach of the covenant of good faith and fair dealing,

Mr. Casso has been and continues to be substantially injured and is entitled to the

damages he has sustained and will sustain, and any gains, profits or advantages he

was to receive under the terms of the contract.

## FOURTH CLAIM
### (Fraud)

33.    Plaintiff repeats and realleges each of the allegations contained in paragraph 1

through 32 above.

34.     Defendant, Carlo made numerous representations to Mr. Casso regarding his intention to secure legal representation for the plaintiff and induced him to cooperate with the writing of the book by making these representations that the defendant knew to be false.

35.     As a result of these fraudulent representations, Mr. Casso agreed to work with the defendant to write the book.

36.     Mr. Casso has been and continues to be substantially injured as a result of defendant's fraudulent conduct.

37.     Mr. Casso is entitled to be compensated for his damages including the reasonable expense of litigation caused by the fraud and for punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff Mr. Casso demands judgment against defendant, Philip Carlo, for the following relief:

## A) On Plaintiff's First Claim

1) That judgment be entered for plaintiff and against defendant for plaintiff's actual damages according to proof and for defendant's profits attributable to defendant's unjust enrichment;

2) That defendant be required to account for all gains, profits and advantages derived from their unjust enrichment;

3) That all gains, profits and advantages derived by defendant from his unjust enrichment be deemed to be held in constructive trust for the benefit of plaintiff and that plaintiff be awarded such amount, plus interest;

4) That plaintiff have judgment against defendants for punitive damages in an amount to be determined at trial and plaintiff's costs and attorneys' fees as permitted by law; and

5) That the Court grant to plaintiff such other and further relief as the Court may deem just and proper.

**B) On Plaintiff's Second Claim**

1) That judgment be entered for plaintiff and against defendant Carlo for plaintiff's actual damages according to proof;

2) That the Court grant to plaintiff such other and further relied as the Court may deem just and proper.

**C) On Plaintiff's Third Claim**

1) That judgment be entered for plaintiff and against defendant Carlo for plaintiff's actual damages according to proof;

2) That the Court grant to plaintiff such other and further relied as the Court may deem just and proper.

**D) <u>On Plaintiff's Fourth Claim</u>**

1) That judgment be entered for plaintiff and against defendant for plaintiff's actual damages according to proof and for defendant's profits attributable to defendant's unjust enrichment;

2) That defendant be required to account for all gains, profits and advantages derived from their unjust enrichment;

3) That all gains, profits and advantages derived by defendant from his unjust enrichment be deemed to be held in constructive trust for the benefit of plaintiff and that plaintiff be awarded such amount, plus interest;

4) That plaintiff have judgment against defendants for punitive damages in an amount to be determined at trial and plaintiff's costs and attorneys' fees as permitted by law; and

5) That the Court grant to plaintiff such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiff demands a trial by jury on all relating to this Complaint and any and all issues triable to a jury that will be raised by defendant's responsive pleadings.

By:_____

Anthony J. Pope (AP 2188)
PICILLO CARUSO POPE EDELL PICINI, P.C.
60 Route 46 East
Fairfield, New Jersey 07004
(973) 667-6000
Attorneys for Plaintiff

2009042217-4058

| AO 440 (Rev. 10/03) Summons in a Civil Action | RETURN OF SERVICE | |
|---|---|---|
| SERVICE OF: | SUMMONS, COMPLAINT, CIVIL COVER SHEET | |
| EFFECTED (1) BY ME: | RICK LETTAU | |
| TITLE: | PROCESS SERVER | DATE: 04/25/09 @ 11:14 AM |

CHECK ONE BOX BELOW TO INDICATE APPROPRIATE METHOD OF SERVICE:

[X] Served personally upon the defendant:

PHILLIP CARLO

Place where served:

42 EAST 2nd STREET    FREEPORT, NY   11520

[ ] Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein. Name of person with whom the summons and complaint were left:

Relationship to defendant: _____

Description of person accepting service:    5'8"

SEX: M  AGE: 55-65 HEIGHT: 5'6"  WEIGHT: 165-180  SKIN: WHITE  HAIR: GRAY/BLACK  OTHER:

[X] To the best of my knowledge, said person was not engaged in the U.S. Military at the time of service

STATEMENT OF SERVER

TRAVEL $ _____    SERVICES $ _____    TOTAL $ _____

DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in this Return of Service and Statement of Server is true and correct.

DATE: 04 / 25 / 2009

SIGNATURE OF RICK LETTAU
GUARANTEED SUBPOENA SERVICE, INC.
2009 MORRIS AVENUE
UNION, NJ 07083

ATTORNEY:   ANTHONY J POPE, ESQ
PLAINTIFF:   ANTHONY CASSO
DEFENDANT:   PHILLIP CARLO
VENUE:   DISTRICT OF NEW YORK
DOCKET:   09 CIV 520 LTS JCF

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

ZC

EXHIBIT B

Anthony J. Pope (AP 2188)
**CARUSO POPE EDELL PICINI, P.C.**
60 Route 46 East
Fairfield, New Jersey 07004
(973) 667-6000
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ANTHONY CASSO,

        Plaintiff,

- against -

PHILIP CARLO,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

09 Civ. 520 (LTS)

**CLERK'S CERTIFICATE**

    I, J. Michael McMahon, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action commenced on January 20, 2009 with the filing of a summons and complaint, a copy of the summons and complaint was served on defendant by serving defendant, Philip Carlo, personally through a Process Server at 42 East 2nd Street, Freeport, New York, and proof of such service thereof was filed on May 21, 2009.

    I further certify that the docket entries indicate that the defendant has not filed an answer or otherwise moved with respect to the complaint herein. The default of the defendant is hereby noted.

Dated: New York, New York

_NOV 2, 2009_

                               **J. MICHAEL MCMAHON**
                               Clerk of the Court

               By: _____
                    Deputy Clerk

EXHIBIT C

Anthony J. Pope (AP 2188)
**CARUSO POPE EDELL PICINI, P.C.**
60 Route 46 East
Fairfield, New Jersey 07004
(973) 667-6000
Attorneys for Plaintiff

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
ANTHONY CASSO,

             Plaintiff,                         09 Civ. 520 (LTS)

- against -                         **CLERK'S CERTIFICATE**

PHILIP CARLO,

             Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

       I, J. Michael McMahon, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action commenced on January 20, 2009 with the filing of a summons and complaint, a copy of the summons and complaint was served on defendant by serving defendant, Philip Carlo, personally through a Process Server at 42 East 2nd Street, Freeport, New York, and proof of such service thereof was filed on May 21, 2009.

       I further certify that the docket entries indicate that the defendant has not filed an answer or otherwise moved with respect to the complaint herein. The default of the defendant is hereby noted.

Dated: New York, New York

       7/17/09

                              **J. MICHAEL MCMAHON**
                              Clerk of the Court

By: _____
          Deputy Clerk


EXHIBIT D

**Ganer & Ganer**
**1995 Broadway**
**New York, NY 10024**
**(212) 873-1472**

#67

July 11th, 2007

Dear Mr. Casso,

I hope this finds you well. Dante and Nina send their love. I just don't understand how Aronson could have sent that letter that way. You need to know that he was partners with Lawrence Hochheiser, who was one of the foremost criminal attorneys in New York City. Hochheiser and Aronson handled many major organized crime cases. This I know to be a fact. Having said that, I was sure Aronson could take what we asked him to do, the least of which was sending you mail in the correct way. At this juncture I've called him twice and left him a message to find out what happened to your papers and do exactly what you said and contact ADX. He's a forthright and sincere fellow and I'm hopeful this can be resolved with the return of your documents. It's a crying shame you can't make copies.

Yes, of course, the government screwed up in a major way by putting Kaplan on the stand to get fat and skinny. That was all about band standing, wanting the limelight and press --- screwing you...Certainly not justice. You ask if I have the trial transcript, no I do not, but I'll ask my assistant to contact the court house and obtain the records. My assistant sent the $200.00 via postal money order on June 10th, 2007. She recently went to the post office to start an investigation using the receipt number for the money order. She was told that an inquiry would take 4-6 weeks. In the meantime, I'm sending another $200.00.

Regarding your friend, Anita, I'm sorry to hear about her health issues. I know she's been a friend to you. Regarding the five, I want you to get some insight into the larger picture before I say more. In the publishing industry these days they spread the payments out over a 3 year time period that goes like this—1/4 upon signing the contract, 1/4 upon handing the book in, 1/4 upon release, and 1/4 upon the publishing of the soft cover version. Because it happens like this, you never see a substantial amount at one time. It makes the economics of doing this somewhat impractical. Regardless, that's the way it is. You learn to live with it or find another business. Having said that, you need to understand that we did not get what we were hoping for because four books have been contracted on the mafia cops situation, all of which

**EXHIBIT E**

describe your career in detail. You made many public statements regarding crimes you committed. Just about everything you told the government you did has appeared in the public forum. I think to a degree that because the government consistently besmirched your character and veracity, we met with skeptical editors as opposed to enthusiastic ones. Your publicly changing your mind and your being publicly attacked and called a liar, all did not bode well my friend. But I believe staunchly in this, and we fought tooth and nail, as well as had many meetings. My level of enthusiasm could not have been higher and we ended up with an okay deal, but with a good house, Harper Collins. In the end, I absolutely feel this will be a best seller. The fact is, I know this will be a best seller because I'm 2/3 finished with it right now, and it's quite brilliant, if we don't say so ourselves.

As you know this is the third time I'm writing the true account of epic crime, both my other books were New York Times bestsellers. As far as I know, the writer you referred to, Nick Bryant has had no books published. I am absolutely sure that my reputation in the publishing industry far outweighs Bryant's. Having said that, I know a great story when I see one and I believe this is a truly great story. You must understand that there are so many facts, names, places, events and details that a book like this should take a minimum of three to five years to research and write. We do not have that luxury of time. The publisher wants to get it out there sooner I do not have the access to you that I should have. Yet, I believe all that we have is as strong as anything ever written about LCN. Indeed, much stronger!!

Unfortunately, needless to say, with ALS came a lot of unexpected expenses. However, the next payment, when I hand the book in, I'll get as much as I can to your friend. We are hoping the first draft should be done in the fall. Am I to assume my friend hat all that you made on the streets is gone, if you don't mind my asking?

Regarding Henry Ho, we called him at the number in Singapore we were given by UBS, the investment firm he's currently working for. I left a message, and I also sent him an email. I don't think without his cooperation I can get anything from him as such, particularly documentation tying him to Kaplan and the factories. Having said that, of course, I'll be happy to do whatever you ask. Let me underscore that I do understand the importance of Kaplan and him, and how Kaplan used his family to hide funds. I'm sure, in fact, that the government knows this (just the way the government knows Saul was a drug dealer, that Saul killed a cop, and that Saul was a low-life scumbag). But none of any of that stopped them from calling him a hero in open court. Just because you said things that besmirched Saul, they buried you. This brief will be a big expose of that...

Let me get something clear with you, though. I do believe that you suffered a grave injustice. The problem is proving it in a federal court room where everything is stacked against you. I know you don't need me telling you any of this stuff, and the only reason I mention it is because what we are dealing with here is a corrupt system that is self-serving and feeds upon anyone they can use. Unfortunately, they fed upon

you. As I said before, I'm hoping this brief can become the definitive statement on exactly what was done to you…How you were used, abused, and discarded like an old shoe. I'm hoping we can find some law professors who see the grave injustice and are willing to review your case with the help of a legion of law students. With regards to Neil Gordon, to date he has not responded to two letters I sent him. I've called him without exaggeration, about 50 times and no one ever answers the phone.

You mentioned Lieutenant Pooley, and I was waiting until I got to the part of the story where fat and skinny are involved. I try to utilize information when I need it, as opposed to everything at once. Because everything at once is too much for any one person to deal with. Having said that, right now I'm just about ready to begin writing about fat and skinny, so I plan to make an effort to get as much info from as many sources as I can. I know it might not seem like I know what I'm doing to you, but rest assured I really know what I'm doing. And I'm really good at what I do. And all I'm doing right now, quite literally, is working on this project. There is nothing else but this project. I'm taking the liberty here of including some reviews for my books.

We did, as you asked, place the memorial for Lillian. It will appear August 2nd in the Daily News. Please, my friend, feel free to ask for any kind of assistance regarding matters like that. You can count on me to take care of them.

Regarding the postmark dates for letters 56 and 57, they were opened at the law office and I never saw the envelopes, just the letters. But the letters appeared 30 days after you sent them. Regarding the Capital Bank in Florida, I'll take your word that they used gems and documentation provided by Kaplan, plus the deed he took from you to secure a two million dollar loan. I'll write it that way in the brief and the story.

Again, regarding Kaplan—of course the government should have tried fat and skinny in 1994 with you as the star witness, but they did not play ball with you. They purposely corrupted Judge Block's perception of you, and you mentioned in letter 68 that we have to show Frederick Block that he messed up badly…That will not be a small task, but I think if we can lay everything out in a simple to understand way, we might very well be able to turn all of this around. The key, my friend, is to keep it simple and keep the natural chronology of the events accurate and true. I well know everything, since we started communicating, regarding your experiences with the government and we soon will be at the juncture where you go on the lam and your arrest takes place. I'll be able to write in great detail, simply and honestly, how the government hijacked and ran away with the rule of law. For all intents and purposes your story ends when you were shipped off to where you are now. The government wants you to rot and die, but now we're going to try to turn that around. We're going to try to make that the beginning of your story. After we get everything on paper about how the legal issues unfolded after your arrest, I'd also like to write in great detail about how you've been treated since your incarceration. Especially about where you are now. I'd like the last chapter to be all about the demise of LCN, about how whatever honor LCN was thrown out the window with the bathwater.

That's about it for now, my friend. Please write me and tell me about your going on the lam; write me too about events you want portrayed in '88-89, I look very forward to hearing from you. Please understand that I'm in this through thick and thin. In a few weeks, we'll be writing nothing but government corruption. So, be ready. Like I said, everything you've written me has been filed and cross-indexed twice. Be well, take care.

Sincerely,

**Ganer, Grossbach & Ganer, LLC**
**1995 Broadway**
**New York, NY 10024**
**Tel: 212.873.1472**
**Fax: 212.208.4345**

#72

July 28th, 2007

Dear Mr. Casso,

I trust this finds you well. I really didn't realize that everything was gone, considering the voluminous amount of funds you were making. Having said that, I do know that Lily was shaken down, but I believe the amount you told me that was taken from her was $175k. In any event, I'm enclosing here the answers to your questions. You must realize that the payout it over a 3 year period. With the agent's commission, 15%, and taxes, we're really talking about very little money, considering the amount of time involved in taking this to its fruition. Again, 25% upon signing...25% when the manuscript is accepted...ten to thirteen months later 25% when the hardcover is released...then another 25% when the soft cover is released 1 year later. I hope this clears it up for you. It's very bad the way publishing companies have set up the payment schedules but everyone has to deal with this.

Of course the book won't end in 95. The book will end the last day I'm writing, probably in Oct 2007. I'm looking forward to your letters. I'm working hard. Dante and Nina say hello—send their love.

All the best,

EXHIBIT F

OCT 9, 2007

DEAR Philip.

I am writing at this time only to refresh your memory
concerning our original deal with you writing my book.
A little over a year ago when you had first contacted me
about a deal, I had told you that I already had a book deal
in the workings with Nick Bryant from New York city,
who had a commitment on his proposal with Brown Publishers,
which I had sent you a copy of the proposal, and told you because
of my friendship with your mother and brother for many years,
that I would give you the very same deal I had with Bryant,
which was fifty - fifty right down the line, which also
automatically includes any movie rights.

Now in one of your letters you mention that you had considered
making me a partner only in the movie rights.
There was no way that I would have written my story without
it being profitable to me, that would be senseless.
To be perfectly honest you should write-up an agreement stating
that both you and I are equally partners in any and all publications,
movie rights, etc. I had asked you for a binding agreement
from day one, I should see equal benefit from the 200 plus from
Harper Collins, you should agree in all fairness.

SINCERELY
Anthony.

EXHIBIT G